**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **PAT C. GREEVER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:11cv101** |
| | § | |
| **COLLIN COUNTY COMMITTEE ON** | § | |
| **AGING, INC.** | § | |
| **Defendant.** | § | |

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**</u>

**TO THE HONORABLE JUDGE OF SAID COURT**:

     **NOW COMES** Defendant, Collin County Committee on Aging, Inc., and files its Motion

for Summary Judgment and Brief in Support and in support thereof would show the following:

I.

<u>**Statement of Issues**</u>

     Plaintiff Pat C. Greever's claim for age discrimination under the Age Discrimination in

Employment Act and Chapter 21 of the Texas Labor Code fails because Greever cannot prove

that but for his age, he would not have been terminated.   Specifically, Greever cannot prove that

Collin County Committee on Aging, Inc.'s legitimate non-discriminatory reason for termination

was a pretext for age discrimination.

<u>**Summary Judgment Evidence**</u>

     In support of this motion, defendant relies on the following summary judgment evidence:

Exhibit 1:   Affidavit of Lois Marilyn Stidham

Exhibit 2:   Affidavit of Juli Smith

Exhibit 3:   Business record affidavit of Ronald Pledger

Exhibit 4:   Excerpts from the Deposition of Pat C. Greever

Exhibit 5:   Excerpts from the Deposition of Anne Polk


**Statement of Undisputed Material Facts**

Collin County Committee on Aging, Inc. (CCCoA) is a private nonprofit organization committed to serving the needs of the elderly residents within Collin County.  (Our Mission *available at* http://www.cccoaweb.org (2011)) One of the programs of CCCoA is public transportation for Collin County.  (Exhibit 1, paragraph 3)  This program is implemented through the Collin County Area Regional Transit Authority (CCART).  *Id.*  Lois Marilyn Stidham (Stidham) was the Executive Director of CCCoA from March 3, 2002 through August 3, 2009.  (Exhibit 1, paragraph 3)  As the Executive Director, Stidham made the decision to hire Pat Greever (Greever) as Director of Transportation on July 8, 2002.  (Exhibit 1, paragraph 4) Stidham was 59 years old when she hired Greever and Greever was 60 years old when Stidham hired him. (Exhibit 1, paragraph 5)  Stidham also personally terminated Greever on October 1, 2007, which termination was effective as of October 8, 2007.  (Exhibit 1, paragraph 3)  Both the decision to hire Greever and the decision to terminate Greever were made solely by Stidham as the Executive Director.  (Exhibit 1, paragraph 3)  Stidham was 64 years old when she terminated Greever and Greever was 66 years old when she terminated him.  (Exhibit 1, paragraph 5)

CCCoA has always employed a large percentage of older workers.  (Exhibit 1, paragraph 6; Exhibit 3-A)  On October 1, 2007, which is the date Stidham verbally told Greever he was terminated, CCCoA had 72 out of 91 employees who were 41 years old or older, including one

90 year old individual.  *Id.*   This number includes Greever.  *Id.*   On October 1, 2007, over 25% of the CCCoA employees were old enough to draw Social Security.  *Id.*   Within the 2 years before Stidham hired Greever, Stidham hired Bill Schorer at the age of 60 as Director of Human Resources and Jerry Scheffield at the age of 64 as Director of Development.   (Exhibit 1, paragraph 7)   Both men were good employees and Stidham never terminated either one of them.  *Id.*

On October 1, 2007, no meeting with Greever was planned.   (Exhibit 1, paragraph 8) Greever was waiting for Stidham outside her office and she was puzzled as to why he was there. *Id.*   Once Greever came into her office, the first words out of his mouth were that he wanted to bury the hatchet and he wanted their relationship to be like it had been 2 or 3 years ago.  *Id.* Stidham thought this was not realistic because she did not believe Greever's attitude would suddenly change from what it had been the previous several years.  *Id.*   Greever's attitude was negative, angry, critical, insubordinate, disrespectful, and confrontational.  *Id.*   Greever started talking about how the morale in CCART was just horrible, that CCART was terribly mismanaged, and that CCART was in disarray.   (Exhibit 1, paragraph 9)   Stidham did not agree.  *Id.*   Quite to the contrary, before Ronald Pledger (Pledger) had been hired by Greever to assist Greever with operations, morale was quite low.  *Id.*   The employees in CCART were extremely unhappy with Greever's treatment of them.  *Id.*   Once Pledger arrived, morale quickly improved greatly because Pledger, instead of Greever, was communicating directly with the drivers on a daily basis. *Id.*   Additionally operations were running smoothly with fewer problems.  *Id.*

Later in this same meeting on October 1, 2007, Greever apologized for hiring Pledger and said that this was a mistake.   (Exhibit 1, paragraph 10)   Stidham was incredulous because Pledger had done a wonderful job of turning employee morale around and operations were running much smoother than they previously had.   *Id.*   Greever continued to berate and criticize the job Pledger was doing.   *Id.*   Greever then said he was going to move back into the main building in his old office.   (Exhibit 1, paragraph 11)   Stidham viewed this as a prime example of Greever's arrogance and insubordination.   *Id.*   This decision was the Executive Director's to make--not the Director of Transportation's to make.   *Id.*   Yet Greever told Stidham, --not asked--that he was moving back into the main building.   *Id.*   Stidham had previously moved Greever out of the main building, because of the low employee morale that had resulted from his harsh and insensitive treatment of the drivers and other employees.   *Id.*

By this point, it was clear to Stidham that Greever was trying to get rid of Pledger and take over Pledger's responsibilities in operations, which responsibilities had previously been Greever's before Greever hired Pledger to run operations.   (Exhibit 1, paragraph 12)    Stidham was sick to her stomach because of Greever's making a scapegoat of Pledger was a profound lack of integrity.   *Id.*   Pledger had moved his wife and children from Waco to McKinney, because Greever hired Pledger to run operations.   *Id.*   Pledger had done a fine job of running operations. *Id.*   And now Greever was trying to get rid of Pledger and take back control of operations.   *Id.* By this time, Stidham was done.   (Exhibit 1, paragraph 13)   Stidham had had constant problems with Greever's negative, angry, critical, insubordinate, disrespectful, and confrontational attitude for so long and she had always tried, unsuccessfully, to work around Greever's attitude that she was done putting up with him.   *Id.*

It was common knowledge in the agency that Greever planned on retiring sometime in the near future.  (Exhibit 1, paragraph 14)    In the hope of allowing him to officially retire instead of being fired, Stidham asked him what his retirement plans were.  *Id.*   Greever responded, 'Well, I'm going to stay here two more years and then come back as a consultant for this agency.' Once again, his arrogance, disrespect, and insubordination were appalling.  *Id.*   The decision regarding whether he would come back as a consultant was the Executive Director's to make--not his.  *Id.*   Yet Greever was telling Stidham--not asking her--that he was coming back as a consultant to the agency after his retirement.  *Id.*

Greever was just so negative and had such negative energy, it was palpable.   (Exhibit 1, paragraph, 15)   But when he said he was going to stay, Stidham said, 'Pat, that's not possible', because she had finally hit the line where she could no longer tolerate that kind of behavior and lack of integrity.  *Id.*   Stidham told him that that was not possible, that this was not working out, and that day would be his last day.  *Id.*   Stidham said, 'You've got one or two options, either terminate you right here, which you are, or you can announce your retirement and that way save a little face.'  *Id.*   Greever said, 'Well, I'm not ready to discuss this because I can't make a decision this quickly.'  *Id.*   Stidham said, 'Well, how about you take a couple of days to think about this, about what you want to do, go home with pay, you know, for a couple of days and then get back with me about how you want this handled.'  *Id.*   Greever failed to respond within a couple of days.  (Exhibit 1, paragraph 16)   Therefore, Stidham officially terminated him and decided to pay him through October 8, 2007, which was the end of the current payroll at that time.  *Id.*

In addition to Greever's lack of integrity concerning Pledger, the termination on October 1, 2007, was the culmination of Greever's negative, angry, critical, insubordinate, disrespectful and confrontational attitude in the workplace.   (Exhibit 1, paragraph 17)   Greever himself admits that he had problems with his interactions with employees, his anger, and had difficulty getting along with other employees, including other supervisors and employees under his supervision.   (Exhibit 4, page 71, lines 11-24)   He also admits that these were ongoing problems each year that he worked at CCCoA.   (Exhibit 4, page 71, line 25 to page 72, lines 1-3)

In staff meetings of the Directors of the agency, as Executive Director, Stidham would ask each Director to present an agenda of what each Director was working on the next week and what they planned to achieve during the next week.   (Exhibit 1, paragraph 17)   Greever refused to participate.   *Id.*   In staff meetings with the Directors, when someone disagreed with Greever, or Greever disagreed with someone, he would become unreasonably angry, very red in the face and would sarcastically ridicule what had been said.   (Exhibit 1, paragraph 18)   Greever then refused to say anything the rest of the meeting and he would glare at the other Directors to try to intimidate them.   (*Id.* ; Exhibit 2, paragraph 10)   Twice in staff meetings, Greever got angry, slammed his notebook shut, and stormed out of the room.   (Exhibit 1, paragraph 18)   When Stidham would talk to Greever about his anger, he would shrug it off.   *Id.*   The other Directors were frustrated with him.   (Exhibit 1, paragraph 19)   Greever refused to participate with the other Directors and refused to work with them.   *Id.*   As previously stated, employee morale was low until Pledger ran operations instead of Greever.   (Exhibit 1, paragraph 20)   Greever's

interpersonal skills were abysmal.   *Id.*   He treated Stidham and others in her presence with

disrespect and contempt.   *Id.*

Additionally, two employees, while under Greever's supervision, were terminated for

sexual harassment.   (Exhibit 4, page 38 line 22-25, page 39 line 18-25; Exhibit 1, paragraph 21)

After consulting with a labor lawyer**,** Stidham made the decision to terminate these two

employees.   (Exhibit 1, paragraph 21)   Greever angrily expressed his displeasure to Stidham

that these two employees were terminated.   *Id.*   Greever was grossly indifferent to the

harassment these employees had subjected some of the female drivers to endure.   *Id.*

Afterwards, Greever refused to attend the entire Sexual Harassment Sensitivity Training course

that all Directors were supposed to attend in its entirety.   *Id.*   Before leaving the training course

early, Greever was smirking and being dramatically bored for all to see.   *Id.*

Greever also had violated Federal Transit Administration rules and regulations by

unilaterally purchasing vehicles for fixed routes that were not handicap accessible. (Exhibit 4,

Page 29 lines 19-25 to page 30 line 1; Exhibit 1, paragraph 22)   Further, Greever hid this

information from Anne Polk, with the Texas Department of Transportation (TxDot).   (Exhibit 5,

page 31, lines 4-16)   Polk was responsible for reviewing and managing the federal and state

funds for public transportation and making sure that the recipients of the funds expended the

funds correctly.   (Exhibit 5, page 9, lines 3-7)   Additionally, Polk made a surprise visit on a

CCART route and determined that TxDot directives were being violated.   (Exhibit 5, page 33,

lines 11-20)   Polk showed up at a stop in a wheelchair and was refused a ride and told to call

another bus because that bus was not wheel-chair accessible, which not ADA compliant.

(Exhibit 5, page 33, lines 23-35; page 34, lines 1-5)   Moreover, on a second follow up surprise

visit, Polk discovered that the driver of the CCART vehicle (under Greever's supervision) did

not know how to buckle the wheel chair, which was a safety and training issue.   (Exhibit 5, page

58, lines 3-19)

Greever also violated Federal Transit Administration rules and regulations by unilaterally

making the decision to provide one van exclusively to residents of Country Lane retirement home

in McKinney, which constitutes private transportation, not public transportation. (See Exhibit 1,

paragraph 23; Exhibit 5, page 39, lines 11-25; page 40, lines 1-8)

Greever also unilaterally decided to continue CCART service to the City of Frisco,

indefinitely, after the City of Frisco ceased paying for the service.   Greever made this decision

without authorization.   (Exhibit 1, paragraph 26)

Greever also inappropriately verbally assaulted a handicapped client on the downtown

square in McKinney.   Greever got in her face and publicly yelled and screamed at her while

holding her wheel chair.   (Exhibit 1, paragraph 27)

On one occasion, several Senior Services employees were gathered around the conference

table in the offices of Senior Services, when suddenly Greever slammed keys on the table, and

said to the case manager, "Are you stupid?"   (Exhibit 2, paragraph 4)   Greever then chewed her

out in front of everyone.   *Id.*   Stidham became aware that Greever had publicly berated and

demeaned these employees in the Senior Services program regarding how they were performing

their jobs.   (Exhibit 1, paragraph 28)   These employees were not under Greever's supervision.

(Id.; Exhibit 2, paragraph 6)   Greever had no authority to discuss the performance of these

employees with them.   (Exhibit 4, page 41, lines 14-22; page 42, lines 14-22; Exhibit 1,

paragraph 28; Exhibit 2, paragraph 6)   Greever exceeded his authority as Director of

Transportation.   (Exhibit 1, paragraph 28)   Greever's rude treatment of these employees also

was totally inappropriate.   *Id.*   Greever's rude treatment of these employees was so outrageous

that Juli Smith, who was the employees' Director, confronted Greever about his unauthorized

confrontation of these employees.   (Exhibit 1, paragraph 29; Exhibit 2, paragraph 6)

Greever claims that he was terminated because he was discriminated against because of

his age.   (Exhibit 4, page 6, lines 22-25; page 8, lines 18-23)   Greever states that the earliest and

the latest date that any discrimination took place were on October 8, 2007, as stated on his

Charge of Discrimination.   (Exhibit 4, page 8, lines 5-12)   However, Greever admits that there

was no act that he relies on that occurred on October 8, 2007 as the basis for his claim of age

discrimination.   (Exhibit 4, page 9, lines 14-22)   Greever states that the primary act that his

claim for age discrimination is based on is the action Stidham took on Monday, October 1, 2007,

which was the date Stidham terminated him.   (Exhibit 4, page 14, lines 6-8; Exhibit 1, paragraph

4)   Greever states that during the October 1, 2007 meeting and discussion with Stidham that

Stidham asked him "Pat, what are your plans for retirement?" to which he stated he planned to

stay through the end of the following year.   (Exhibit 4, page 23, lines 11-14)   Stidham stated

that "we can't wait that long" and gave him the choice to retire or be terminated."   (Exhibit 4,

page 23, lines 19-22)

Greever also states that because Stidham, other employees and people outside of CCCoA

were aware of his succession plans that it was discriminatory for Stidham to terminate him on

October 1, 2007.   (Exhibit 4, page 14, lines 11-25; page 15, lines 1-9)   Greever then admits that

it was not the awareness of his plans that were discriminatory.   (Exhibit 4, page 17, lines 21-25)

Also, Greever states that there were other employees throughout his tenure at CCCoA that were beyond the age of 65 that he believes were terminated because of their age.   (Exhibit 4, page 15, lines 13-20)   Greever claims that Joyce Kincaid was one of those employees but does not recall the name of the other lady.   (Exhibit 4, page 16, lines 5-8)   Greever believes Kincaid was discriminated against because of conversations that he had with Stidham after Kincaid's termination.   Greever claims that Stidham stated that "Ms. Kincaid needed to go.   (Exhibit 4, page 19, lines 5-7)   She was at a point in time that her services to the agency no longer were – no longer warranted the amount of money that she was being paid as an employee."   (Exhibit 4, page 19, lines 7-10)   Also that "Kincaid did not want to go."   (Exhibit 4, page 19, lines 11-12)

Greever has offered no other evidence in support of his claim.

### Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   In making this determination, all reasonable doubts are to be resolved in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir. 1981) The substantive law identifies which facts are material.   *See id.* at 248.

The summary judgment movant must show that the admissible summary judgment evidence is insufficient to permit the nonmoving party to carry its burden of proof.   The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial"

and "may not rest upon the mere allegations or denials of his pleadings."   FED. R. CIV. P. 56(e);

*Anderson*, 477 U.S. at 248.   "Conclusional allegations and denials, speculation, improbable

inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute

for specific facts showing a genuine issue for trial."   *Roach v. Allstate Indemnity Co.*, 2012 U.S.

App. LEXIS 8738, 2012 WL 1478745 (5th Cir. 2012), citing *SEC v. Recile*, 10 F.3d 1093, 1097

(5th Cir. 1993).


## ARGUMENTS & AUTHORITIES

"Under the ADEA [Age Discrimination in Employment Act], it is unlawful for an employer

to discharge an employee 'because of such individual's age.'"   *Cervantez v. KMGP Services

Company*, 349 Fed. Appx. 4, 2009 WL 2957297, *3 (5th Cir. 2009).[1]   To establish an ADEA

claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or

circumstantial), that age was the 'but-for' cause of the challenged employer decision."   *Gross v.

FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009).


### No Direct Evidence of Age Discrimination

In this case, Greever may attempt to assert that Ms. Stidham's inquiry into his retirement

plans and her subsequent offer to allow Greever to retire in lieu of termination somehow

---

[1]   The Plaintiff has filed suit for age discrimination under both state and federal law; the Age Discrimination in
Employment Act and the Texas Commission on Human Rights Act. "In enacting the TCHRA [Texas Commission on
Human Rights Act], the Texas legislature intended to correlate state law with federal law in employment
discrimination cases."   *See Spinks v. Trugreen Landcare, L.L.C,* 322 F.Supp.2d 784, 791 (S.D. Tex. 2004), *citing*
Tex. Labor Code Ann. Section 21.001. "Accordingly, in employment discrimination cases, courts employ the
burden-shifting analysis established by the United States Supreme Court." *Id.*

constitutes "direct evidence" of age discrimination.   Such remarks, however, do not constitute direct evidence.

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) *quoting Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Workplace comments may provide sufficient evidence of discrimination if they are (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained of adverse action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.   *See Moss v. BMC Software Inc.*, 610 F.3d 917, 929 (5th Cir. 2010).   However, to qualify as direct evidence of age discrimination**,** the comment must nevertheless be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions" that plaintiff was terminated because of his age.   *See E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).

 "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct."   *Sanstad,* 309 F.3d at 897-98.

Ms. Stidham's remarks in this case are not direct (or circumstantial) evidence of age discrimination.   Specifically, Stidham asked about Plaintiff's retirement plans and informed him: "You've got one or two options, either terminate you right here, which you are, or you can announce your retirement and that way save a little face."   Nowhere in her discussion with Greever does Stidham mention Greever's age or state that he is being terminated because of his age.   That Greever planned to retire was well known at CCCoA; therefore, Stidham referenced retirement as an option for Greever to allow him to save face and avoid termination.   This

reference was merely a stray remark as it was unrelated to his age or the reason for the termination decision.

Courts have "repeatedly held that 'stray remarks' do not demonstrate age discrimination." *Moss v. BMC Software Inc.*, 610 F.3d 917, 929 (5th Cir. 2010); *see also E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)(decision to terminate was explained as "it's just that you've reached that age and years of service that we can bridge you to retirement."; court held this was a stray remark that does not demonstrate age bias; court found that the comment "simply recognized a fact concerning plaintiff's seniority"; it was "an observation which did not imply seniority was the reason for discharge.").   Similarly, Stidham's offer to allow Greever to retire rather than be terminated in no way implies that Greever's age was the reason for the decision to terminate Greever.   *See Sandstad*, 309 F.3d at 897; *Tex. Instruments, Inc.,* 100 F.3d at 1181.   Nor are Stidham's comments direct and unambiguous such that a reasonable jury could conclude *without any inferences or presumptions* that age was the reason for the termination decision. (emphasis added).   *See Id.*   Thus, Greever has no direct evidence of discrimination.


### No Circumstantial Evidence of Age Discrimination


Where the Plaintiff relies on circumstantial evidence of discrimination, "the burden-shifting framework of *McDonnell Douglas Corp. v. Green* [411 U.S. 792, 802, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973)] applies." *Id.*   Under this standard, the plaintiff must first establish a prima facie case of age discrimination as follows: (1) plaintiff is a member of the protected group of persons over the age of forty; (2) plaintiff was qualified for his position; (3)

plaintiff was discharged; and (4) plaintiff was replaced with someone younger or outside the protected group." *Id.*   For purposes of this summary judgment motion only, CCCoA will not dispute that Greever can meet his burden of establishing his *prima facie* case.

If a prima facie case is established, "the burden then shifts to the employer to produce evidence that the employee was discharged 'for a legitimate, nondiscriminatory reason.   This burden is one of production, not persuasion; it can involve no credibility assessment.'"   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal quotation marks and citations omitted)."   If the employer is able to meet this burden, 'the *McDonnell Douglas* framework — with its presumptions and burdens — disappear[s], and the sole remaining issue [is] discrimination *vel non.*'" *Id.* At 142-43

 "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.   And in attempting to satisfy this burden, the plaintiff — once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision — must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.   That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence".   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal quotation marks and citations omitted).

"'The issue at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for [the plaintiff's] termination.'" *Sanstead*, 309 F3d at 899.   "Courts 'do not try . . . the validity of good faith beliefs as to an employee's competence.   Motive is the issue.'"

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).   A plaintiff can survive

summary judgment by producing evidence that creates a jury issue as to the employer's

discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation.

*Cervantez*, 349 Fed. Appx. 4, 2009 WL 2957297 at *3 (citations omitted).


### Legitimate Non-Discriminatory Reason for Termination

Here, CCCoA did not terminate Greever based on his age.   Rather, Greever was

terminated because of a long history of disciplinary issues and his negative attitude, angry,

critical, insubordinate, disrespectful and confrontational behavior.   (Exhibit 1, paragraph 8; See

also Statement of Facts above)   When during the October 1, 2007 meeting, Greever apologized

for hiring Pledger and stated that it was a mistake; Stidham was incredulous because Pledger had

done a wonderful job of turning employee morale around and operations were running much

smoother than they previously had.   (Exhibit 1, paragraph 10)   Greever continued to berate and

criticize the job Pledger was doing.   *Id.*   Greever then said he was going to move back into the

main building in his old office, which was not only arrogant and insubordinate, but was not his

decision to make, it was Stidham's.   (Exhibit 1, paragraph 11)   Stidham had previously moved

Greever out of the main building, because of the low employee morale that had resulted from his

harsh and insensitive treatment of the drivers and other employees.   *Id.*

It was clear to Stidham that Greever was trying to get rid of Pledger and take over

Pledger's responsibilities in operations, which responsibilities had previously been Greever's

before Greever hired Pledger to run operations.   (Exhibit 1, paragraph 12)   By this time,

Stidham was done.   (Exhibit 1, paragraph 13)   Stidham had had constant problems with

Greever's negative, angry, critical, insubordinate, disrespectful and confrontational attitude for so

long and she had always tried, unsuccessfully, to work around Greever's attitude that she was done putting up with him.   *Id.*

In the hope of allowing him to officially retire instead of being fired, Stidham asked him what his retirement plans were.   (Exhibit 1, paragraph 14)    Greever responded, 'Well, I'm going to stay here two more years and then come back as a consultant for this agency.' Once again, his arrogance, disrespect, and insubordination were appalling.   *Id.*   The decision regarding whether he would come back as a consultant was the Executive Director's to make--not his.   *Id.*   Yet Greever was telling Stidham--not asking her--that he was coming back as a consultant to the agency after his retirement.   *Id.*

Greever was just so negative and had such negative energy, it was palpable.   (Exhibit 1, paragraph, 15)   But when he said he was going to stay, Stidham said, 'Pat, that's not possible', because she had finally hit the line where she could no longer tolerate that kind of behavior and lack of integrity.   *Id.*   Stidham told him that that was not possible, that this was not working out, and that day would be his last day.   *Id.*   Stidham said, 'You've got one or two options, either terminate you right here, which you are, or you can announce your retirement and that way save a little face.'   *Id.*

In addition to Greever's lack of integrity concerning Pledger, the termination on October 1, 2007, was the culmination of Greever's negative, angry, critical, insubordinate, disrespectful and confrontational attitude in the workplace.   (Exhibit 1, paragraph 17)   Notably, Greever himself admits that he had problems with his interactions with employees, his anger, and had difficulty getting along with other employees, including other supervisors and employees under his supervision.   (Exhibit 4, page 71, lines 11-24)   Greever also admits that these were ongoing

problems each year that he worked at CCCoA.   (Exhibit 4, page 71, line 25 to page 72, lines 1-3)

## No Pretext

In this case, Greever's claims fail because he cannot meet his burden to establish pretext.

### Same-Actor Doctrine Negates Pretext

Greever's claim of age discrimination is negated by the same-actor doctrine.   The same-actor doctrine creates an inference that no discrimination occurred when the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff. *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 229 (5th Cir. 2000); *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir. 1996),   *abrogated in part on other grounds by Russell v. McKinney Hosp. Venture,* 235 F.3d at 225 ("From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job.") (internal quotations omitted).   The inference serves to negate a plaintiff's allegation that non-discriminatory reasons given for termination are pretextual, but "can be overcome by sufficient evidence that the stated reason for termination was pretext for discrimination." *Brown*, 82 F.3d at 651.

In *Brown v. CSC Logic, Inc.*, the plaintiff was hired at the age of fifty-four and fired four full years later by the same person. *Brown* at 656.   The plaintiff's complaint of discriminatory animus in *Brown* was direct and the evidence established four explicitly age-oriented pre-termination discriminatory and offensive comments, including "you're getting too old" and that "senility was setting in."   *See id* at 656; See also *Schutze v. Fin. Computer Software, L.P. et al,* No. 3:04-CV-0276-H, 2006 U.S. Dist. LEXIS 73734, at *15-16 (N.D. Tex. Sept. 26, 2006).

Even in the presence of such a smoking animus gun as those statements, the Fifth Circuit applied the same-actor inference to negate "pretext" and to dismiss the plaintiff's age discrimination claim as a matter of law. See *Schutze* at *15-16; *Brown* at 656.

As in *Brown,* the same-actor doctrine is applicable to this case because Greever was hired by Stidham and subsequently terminated by Stidham.   Stidham, who was age 59 at the time, hired Plaintiff when he was 60 years old.   As in *Brown*, Stidham also fired Greever only 4 years later.   At age 60, Greever was well over age 40 at the time of hire (as was Stidham at age 59).

Thus, the same-actor doctrine applies to this case and establishes an inference that Greever was not terminated because of his age.   The fact that the actor (Stidham) involved in both employment decisions is also a member of the protected class "only enhances the inference." *Brown* at 656.

Greever cannot produce sufficient evidence to overcome this inference, therefore, Greever's claim fails and summary judgment is proper.   See *Schutze v. Fin. Computer Software, L.P. et al,* No. 3:04-CV-0276-H, 2006 U.S. Dist. LEXIS 73734, at *15-16 (N.D. Tex. Sept. 26, 2006) (holding that plaintiff's circumstantial evidence of discriminatory intent failed to overcome the inference created by the same-actor doctrine); see also *Brown* at 656 (holding that even plaintiff's direct evidence of discriminatory animus failed to overcome the inference established by the same-actor doctrine).

## Comments about retirement are not evidence of Pretext

Greever attempts to use Stidham's offer of retirement as evidence of discrimination.   As stated above, Stidham's reference to retirement does not support an age discrimination claim. The reference to retirement was not a discriminatory comment and was unrelated to his age or the

reason for the termination.   The statement was only made as an effort to allow Greever to save face in lieu of being terminated.   It was an after-the-fact courtesy offered to allow Greever to retire rather than be terminated.

That CCCoA would discriminate against its employees based on age defies logic.   After all, the purpose of CCCoA is to serve the needs of the elderly in Collin County.   (See Our Mission *available at* http://www.cccoaweb.org (2011)   In addition to assisting the elderly as a fundamental mission of this non-profit organization, CCCoA has historically employed older workers.   (Exhibit 1, paragraph 6; Exhibit 3-A)   Notably, on October 1, 2007 (the date Stidham verbally told Greever he was terminated),   72 out of 91 CCCoA employees were 41 years old or older, including one 90 year old employee.   *Id.*   At that time, over 25% of the CCCoA employees were old enough to draw Social Security.   *Id.*   Within the 2 years before Stidham hired Greever, Stidham hired Bill Schorer at the age of 60 as Director of Human Resources and Jerry Scheffield at the age of 64 as Director of Development.   (Exhibit 1, paragraph 7)   Both men were good employees and remained employed under Stidham.   *Id.*

Based on the summary judgment evidence, as a matter of law, there was no age-based animus driving Stidham's decision to terminate Greever.

## No other evidence of Pretext

In support of his claim, Greever asserted in his deposition that because Stidham, other employees and people outside of CCCoA were aware of his succession plans that it was discriminatory for Stidham to terminate him in October 2007.   (Exhibit 4, page 14, lines 11-25; page 15, lines 1-9)   Greever however later testified to the contrary admitting that this awareness

of his retirement plans was not discriminatory.   (Exhibit 4, page 17, lines 21-25)   Clearly, that

others were aware of Greever's plans to retire in 2008 is not evidence that he was terminated

because of his age in October 2007.

In support of his claim, Greever states that there were other employees throughout his

tenure at CCCoA that were beyond the age of 65 that he believes were terminated because of

their age.   (Exhibit 4, page 15, lines 13-20)   Greever claims that Joyce Kincaid was one of those

employees and does not recall the name of the other lady.   (Exhibit 4, page 16, lines 5-8)

Greever believes Kincaid or any other employee was discriminated against because Stidham

allegedly stated that "Ms. Kincaid needed to go.   (Exhibit 4, page 19, lines 5-7)   She was at a

point in time that her services to the agency no longer were – no longer warranted the amount of

money that she was being paid as an employee."   (Exhibit 4, page 19, lines 7-10)   Also that,

"Kincaid did not want to go."   (Exhibit 4, page 19, lines 11-12).   Such statements, if made, do

not establish evidence that either Greever or Kincaid were terminated because of their age.   It is

well established that terminating an employee because their high salary is a legitimate

non-discriminatory reason for termination.   *See Hazen Paper Co. v. Biggins*, 123 L. Ed. 2d 338,

113 S. Ct. 1701, 1706-08 (1993); *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 152 (5th

Cir. 1995)(the ADEA prohibits discrimination on the basis of age, not salary or seniority).

Plainly, there is no evidence of pretext based on the retirement reference, the terminations

of other employees or other employee's awareness of his retirement plans.   Additionally,

Greever's subjective belief is not evidence of age discrimination.   *Armendariz v. Pinkerton

Tobacco Co.,* 58 F.3d 144, 152 (5th Cir. 1995).   Plaintiff offers no other evidence of age

discrimination or pretext.

As stated above, CCCoA is committed to helping the elderly.   Greever's age was not the reason for the termination.   The termination decision was made based on Greever's lack of integrity concerning Pledger during the termination on October 1, 2007 and the culmination of Greever's overall negative, angry, critical, insubordinate, disrespectful and confrontational attitude in the workplace and long history of disciplinary issues   (Exhibit 1, paragraph 17; See also Statement of Facts above)   The question of retirement was raised after the termination decision was made and was simply offered as a courtesy to allow Greever to exit via retirement rather than termination.   Even if Greever disagrees with CCCoA's assessment of his behavior, that resulted in his termination, such disagreement is not sufficient to support his claim.   *See EEOC v. La. Office of Cmty. Servs*., 47 F.3d 1438, 1448 (5th Cir. 1995)(Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of employment decisions nor [are they] intended to transform the courts into personnel managers.")

Based on the summary judgment evidence, Greever cannot refute the legitimate non-discriminatory reason for termination.   Likewise, Greever cannot establish pretext or otherwise overcome the same-actor presumption negating pretext.   Rather, the summary judgment evidence makes clear that Greever's age played no part in the termination decision as a matter of law. Therefore, summary judgment is warranted in this case.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, prays that the Court grant Defendant's Motion for Summary Judgment, render a final judgment disposing of Plaintiff's claims in their entirety, and award such other relief to which Defendant is justly entitled.

Respectfully submitted,


CALHOUN PENA CORSENTINO, P.C.


*/s/ Connie Pena*                            
Connie Pena
Lead Counsel
State Bar No. 24034621
Laura Calhoun
State Bar No.06342400
**CALHOUN | PENA | CORSENTINO, P.C**
6175 Main Street, Suite 370
Frisco, Texas   75034
Tel. 469-888-5900
Fax 469-888-5901
Attorney for Defendant
Collin County Committee on Aging

## CERTIFICATE OF SERVICE

I certify that on August 3, 2012, a true and correct copy of Defendant's Motion for Summary Judgment was served ECF Notification

/s/ Connie A. Peña

_____

Connie A. Peña